ANDERSON & McPADDEN, INC., ET AL. *v.*
OTTO TUNUCCI ET AL.

HOUSE, C. J., COTTER, LOISELLE, MacDONALD and LONGO, Js.

Argued November 12, 1974—decision released February 11, 1975

*Paul V. McNamara,* for the appellants (defendants.)

*T. Paul Tremont,* for the appellee (third-party plaintiff), with whom was *Ronald J. Habansky,* for the appellee (named plaintiff).

COTTER, J. While working as a beer salesman for Anderson & McPadden, Inc., Ernest Rosiak, who intervened as a third-party plaintiff, was injured on June 7, 1968, closing the door to the basement of an establishment wherein the defendants, Otto and Anna Tunucci, did business as Otto's Legion Restaurant. The named plaintiff, Rosiak's employer, obligated to pay the applicable benefits under the Workmen's Compensation Act, brought suit to recover damages pursuant to its right of subrogation. After a trial to a jury, a verdict was returned in favor of the plaintiffs in the amount of $71,000; the defendants have taken this appeal from the decision of the court denying their motion to set aside the verdict and from the judgment rendered thereon. They have assigned error in the court's charge to the jury and in an evidentiary ruling which denied admission of certain testimony on cross-examination of a witness for the plaintiffs. Other assignments of error have been specifically abandoned.

## I

We consider first the assignment of error addressed to the charge. The correctness of the charge is determined by the claims of proof of the parties. Practice Book § 635; *Gosselin* v. *Perry,* 166 Conn. 152, 155, 348 A.2d 623; Maltbie, Conn. App. Proc. § 145. The finding discloses that the plaintiffs offered evidence to prove the following facts: At the time of the incident which gave rise to the action below, Rosiak was employed as a route salesman for the named plaintiff. One of the stops on

his route was the defendants' restaurant. On June 7, 1968, after taking a reading of the inventory in the basement of this restaurant, Rosiak went up the stairs and proceeded to close the trap door. A sixty-pound effort was required to lift this door. However, one of the two hinges which controlled the door had been detached from the floor for a long period of time, so that the door was allowed to move freely. The defendants' permittee, Bernard Tunucci, who was in control of the restaurant on behalf of the defendants, knew of this condition but had never warned Rosiak. As Rosiak lowered the door, it went out of control and came down upon him with great force. The pain he experienced was excruciating and he was unable to straighten up. The following day, his wife tried, without success, to contact the family physician. She then called Dr. Theodore J. Dombroski, a chiropractor, who treated Rosiak for two-and-a-half to three months thereafter. This treatment consisted of manipulation or adjustment which is an attempt to expand the area of the back where the disc spaces have compressed or narrowed. Dr. Dombroski ultimately concluded that his treatment had been ineffective, and on August 13, 1968, referred the patient to a neurosurgeon, Dr. Stanley M. Fromm. Dr. Fromm had earlier operated on him in 1962 in response to complications stemming from a fall in 1952. The treatment in 1968 led to surgery involving Rosiak's third lumbar disc. A final operation involving the third and fifth discs was performed in 1970. All three operations—in 1962, 1968, and 1970—concerned disc problems in the lumbar spine. According to Dr. Fromm, the ruptured or degenerated third lumbar disc was caused by the lifting injury. His examination and tests of the patient

conducted in 1970 as a result of further complaints revealed a degeneration in the third and fourth lumbosacral discs and a degeneration of the third and fifth lumbar discs; this degeneration was also related to or caused by the trauma which Rosiak suffered because of the lifting injury. As a result of the disc operation, Dr. Fromm ascribed a 15 percent disability to Rosiak.

The court found that the defendants offered evidence to prove the following: According to Dr. Dombroski, there is a possibility that any therapy, including manipulation, improperly applied, will damage a patient. On July 18, 1968, Dr. Dombroski stated in a report that Rosiak "might be able to do light work within a week or so." On cross-examination, Dr. Fromm stated that Rosiak apparently did very well after his first operation, that he really was not disabled at all, and that such a patient would ordinarily be given a three or four percent disability. Dr. Fromm further testified that the terms "degenerative" or "degenerative changes" are used very loosely, and that degenerative changes, slipped disc, and ruptured disc are all the same. His examination in 1962, moreover, revealed degeneration and protrusion of the fifth lumbar disc, while the discogram of 1970 did not reveal any protrusion, only degeneration. Dr. Fromm added that at the time he operated on the fifth lumbar disc, in 1962, he removed that disc and it grew back. In addition, in 1968 he removed the third lumbar disc and, he testified, it, too, grew back. He stated that there was no way to determine whether the disc grew back properly or whether a new problem with the disc had developed in 1970; a disc can degenerate because of no accident at all; it can be caused by any off-balance lifting or even by step-

ping off a high curb. In apparent contradiction of Dr. Fromm's testimony, Dr. McEllis K. Glass, an orthopedic surgeon, who had examined Rosiak, testified on the defendants' behalf that, once a disc is removed, a scar forms over a period of days and weeks. This scar is about a third of the size of what was there originally, and is designed to serve the same function, but is never as competent as the disc which has been removed; compared to the original disc, the scar lacks the same hydraulic qualities, does not have the same resistance, and does not have the same capacity to tolerate compression as would a normal disc. Finally, Dr. Glass testified that the lifting of the heavy door by Rosiak would not in and of itself cause a disc to herniate.

The defendants, in their exceptions to the court's charge to the jury and in their brief on appeal, have maintained that the court erred in presenting to the jury a detailed summary of the evidence introduced in support of the plaintiffs' case, without also mentioning certain evidence advanced by the defendants tending to prove that Rosiak's claimed permanent disability was due to the fall in 1952 and not to the lifting injury in 1968. They claimed that the "crux of the defense centered around those inconsistencies" found in testimony of Dr. Fromm and Dr. Dombroski, who testified for the plaintiffs, and Dr. Glass, whose testimony was offered by the defendants.

The court's review of the evidence in its charge to the jury is subject to the overriding consideration that its comments be fair and that they not mislead the jury, so that injustice is not done to either party. *Enlund* v. *Buske,* 160 Conn. 327, 331, 278 A.2d 815; *Szlinsky* v. *Denhup,* 156 Conn. 159, 163, 239 A.2d 505; *Ladd* v. *Burdge,* 132 Conn. 296,

298, 43 A.2d 752. We have indicated that the nature and extent of the trial court's comments on the evidence, within constitutional limitations concerning trial by jury, must largely depend on the facts involved in a particular case and the manner in which it has been tried; and the matter of commenting on evidence rests in the trial court's sound discretion. *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594. It has been well stated that "[t]he function of a judge's charge is to enable the jury to find its way through the maze of conflicting testimony, to sift the relevant from the irrelevant, to weigh wisely, and to judge dispassionately. . . . But in drawing together the threads of evidence and marshaling the claims on both sides he must exercise a scrupulous regard for relevance and proportion. Misplaced emphasis here and omission there may work more damage than any outspoken comment. By his summing-up a judge reveals his estimate of relative importance." Frankfurter, The Case of Sacco and Vanzetti, p. 65. Similarly, this court has noted that in the trial court's summary of the evidence "[t]he case, upon the evidence and the law applicable thereto, should be stated with the purpose of giving the jury as clear and correct a view of its various aspects as possible, and with an effort to preserve the proper balance between the various considerations which may be involved." *State* v. *Rathbun,* 74 Conn. 524, 527, 51 A. 540. It is true, of course, that "[t]he degree to which reference to the evidence may be called for lies largely in the discretion of the court"; *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 583, 271 A.2d 94; and that the court is "not bound to discuss particular items of the testimony, such comment being discretionary." *Gosselin* v.

*Perry,* 166 Conn. 152, 165, 348 A.2d 623. But the summary of evidence in a court's charge will not meet the ultimate test of fairness if it directs attention to particular features of the evidence in such a way as to single them out and give them an undue prominence. See, e.g., cases collected in 1 Reid's Bronson Instructions to Juries, 308, 309, § 106 (repl. ed.); James, Civil Procedure § 7.14, p. 292 n.33. "Instructions should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." *State* v. *Rome,* 64 Conn. 329, 339, 30 A. 57; Maltbie, Conn. App. Proc. § 89. "[N]or should certain claimed facts be accorded a comparative weight or bearing beyond that to which they are legitimately entitled." *Kast* v. *Turley,* 111 Conn. 253, 258, 149 A. 673; *Distin* v. *Bradley,* 83 Conn. 466, 76 A. 991; Maltbie, loc. cit. We have repeatedly emphasized that "[o]ur rule that the court may . . . express its opinion on the facts" does not mean that it is licensed to "indulge in an argumentative presentation of the claims of one side." *Bundy* v. *Capital National Bank & Trust Co.,* 124 Conn. 309, 314, 199 A. 561; *Tuckel* v. *Hartford,* 118 Conn. 334, 337, 172 A. 222.

In this case, by far the greatest portion of the trial court's summary of the evidence focused on the testimony of witnesses who testified on behalf of the plaintiff. Thus, its summary included, inter alia, a review of the testimony of Rosiak himself on the history of his back problems and how the subject injury recurred; that of Alexander Chapman, a safety engineer, on the conditions existing

at the site of the claimed accident; that of Lillian Keiser, bookkeeper for the named plaintiff, on Rosiak's earnings prior to the accident; that of Rosiak's wife, on the condition of his back after the 1962 operation; that of Dr. Dombroski, on the nature of his treatment of the back; and that of Dr. Fromm, on the extent of the present disability and the amount attributable to the 1962 operation, on the nature of the aftermath of disc surgery, and on the nature of a disc. The number of references to testimony introduced in support of the plaintiffs' case is not dispositive, however; we have indicated elsewhere that the fact that the claims or evidence of one party are stated at much greater length than those of the other does not by itself render the court's summary of the evidence in its charge unfair. *Sturdevant's Appeal,* 71 Conn. 392, 396, 42 A. 70; see also Maltbie, Conn. App. Proc. § 89.

Indeed, the defendants have not argued that the trial court ignored all of the testimony of their witnesses in its charge to the jury. As a matter of fact, the court summarized in detail the testimony of defendants' witness Bernard Tunucci on the question of the defendants' liability for Rosiak's accident. And while it did not elaborate on the testimony of Dr. Glass concerning the aftermath of disc surgery, the court likewise did not mention in detail Dr. Fromm's description of this phenomenon either; the court merely called the jury's attention to the fact that each physician had proffered a "description of a disc." Moreover, the court commented extensively on Dr. Glass's professional credentials, stating that he was "an orthopedic surgeon with experience in the area of disc pathology" and that "he has had occasion to do some approximately twenty disc operations in the course of a year, on

the average." In addition, the summary of the testimony of the witnesses for the plaintiffs included a review of those portions of such testimony which tended to support certain of the defendants' own claims of proof. For example, the trial court mentioned that Rosiak had testified about a fall in 1952 resulting in an operation on his back in 1962, and that Dr. Fromm had testified about the extent of Rosiak's present disability not attributable to the fall at the defendants' restaurant.

We cannot say that, in light of the foregoing, the trial court's summary of the evidence in its charge to the jury was prejudicially unfair to the defendants. This summary did not assign undue prominence to the testimony supporting the plaintiffs' case, nor did it indulge in argumentative claims in support of the plaintiffs' position. While a more balanced presentation of the evidence may have resulted had the trial court expanded somewhat its discussion of Dr. Glass's testimony concerning the aftermath of disc surgery, and specified the precise points at which this testimony clashed with that of Dr. Fromm, the court's refusal to do so cannot be deemed in and of itself to have irremediably tainted the charge, particularly since the court specifically alluded to facts tending to support the defendants' essential claims of proof. The court's summary in short, did not "sink out of view" the claims or evidence on the defendants' side. See *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57.

In addition, the court repeatedly warned the jury in its charge that they were not bound by its summary of the evidence introduced during the proceedings, but were, rather, to decide the factual issues on the basis of their own recollections. Of

course, mere cautionary instructions to the jury that it is their duty to recall the evidence will not cure a charge which, in their review of the evidence, is unfair. *Ladd* v. *Burdge,* 132 Conn. 296, 298, 43 A.2d 752; *Bundy* v. *Capital National Bank & Trust Co.,* 124 Conn. 309, 314, 199 A. 561; Maltbie, Conn. App. Proc. § 89. But the practice does tend to remove any doubts that the court properly discharged its duty of leaving the jury free to determine the facts and draw their own conclusions therefrom. See, e.g., *Quednau* v. *Langrish,* 144 Conn. 706, 710, 137 A.2d 544; *LaChase* v. *Sanders,* 142 Conn. 122, 124, 111 A.2d 690; *Temple* v. *Gilbert,* 86 Conn. 335, 345, 85 A. 380. In another case, where the court did not attempt to do otherwise than state the testimony of witnesses seriatim and then leave the finding of fact to the jury with an admonition that it was for them alone to evaluate the testimony, a course of action similar to that of the trial court here, we concluded that the charge was not objectionable as stating the evidence in such a way as to remove from the jury decisions as to questions of fact. *Curcio* v. *Goodwin,* 127 Conn. 483, 487, 18 A.2d 360.

The trial court's summary of the evidence was not unfair to the defendants' position, nor did it result in an invasion of the fact-finding province of the jury. Accordingly we cannot say that under the circumstances of this case the court abused its discretion or otherwise erred in instructing the jury as it did.

## II

Dr. Fromm, the plaintiffs' witness and a neurosurgeon qualified as an expert, was not permitted to testify concerning manipulation performed by a

chiropractor to treat a disc condition. The questions addressed to Dr. Fromm on cross-examination by the defendants' counsel called for his opinion as to whether chiropractic manipulation could be "helpful" or "beneficial" to a disc condition; whether a neurosurgeon would ever use spinal manipulation as part of his treatment of a disc condition; whether "movement" or "articulation" of a spine could be "harmful" to a disc condition; whether chiropractic treatment had helped Rosiak; and whether Rosiak would have been better off without it. On objection[1] these questions were excluded, whereupon the defendants' counsel took exceptions. The plain meaning of these questions indicates that the purpose of this portion of the cross-examination of Dr. Fromm was to determine his opinion of the impact of the chiropractic treatment upon Rosiak's disc condition. Evidence that one injured through the negligence of another did not receive the most approved medical or surgical treatment is not admissible, in accordance with the general rule, for the purpose of reducing damages; such evidence, however, may be admissible for the purpose of showing that an injured party had not used due diligence to obtain proper medical treatment. *Ross* v. *Stamford,* 88 Conn. 260, 263, 91 A. 201; *Lange* v. *Hoyt,* 114 Conn. 590, 595, 159 A. 575; *Hayes* v. *United States,*

---

[1] The first in defense counsel's series of questions on this point addressed to Dr. Fromm was: "Q. While I am reading by the way, manipulation certainly couldn't improve a disc condition, could it? A. I don't think so." The plaintiffs' counsel did not object to this question, or move to strike the answer. Immediately thereafter, defense counsel asked basically the same question of Dr. Fromm: "Q. I'm talking about manipulation now, done by a chiropractor, certainly couldn't be helpful to a disc condition?" The plaintiffs' counsel objected, and the objection was sustained. The answer to the first question, to which there was no objection, remains a part of the record.

367 F.2d 340, 341 (2d Cir.). For an injured party can recover from the original tort-feasor for damages caused by the negligence of a doctor in treating the injury which the tort-feasor caused, provided the injured party used reasonable care in selecting the doctor. *Edwards* v. *Goergen,* 256 F.2d 542, 544 (10th Cir.); Restatement, 2 Torts § 457; annot., 100 A.L.R.2d 808, 811.

In this case the defendants do not claim that Rosiak, in seeking the assistance of the chiropractor, failed to exercise due diligence. Nor did they try to establish at trial a reasonable connection between the cross-examination of Dr. Fromm on this point and any issue other than diminution of the plaintiffs' damages. The trial court, then, properly sustained the plaintiffs' counsel's objections to these questions.

There is no error.

In this opinion the other judges concurred.