BERNARD JACQUES, ADMINISTRATOR, (ESTATE OF DOLORES JACQUES) *v.* MARIE CARTER ET AL.
(2257)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued February 28—decision released May 22, 1984

*Richard A. Bieder,* for the appellant (plaintiff).

*Allyn L. Brown, Jr.,* with whom, on the brief, was *Kenneth G. Williams,* for the appellee (named defendant).

*Snow Gene Munford,* for the appellee (defendant William W. Backus Hospital).

HULL, J. This is an appeal[1] in a medical malpractice action from a jury verdict in favor of the defendants, Marie Carter, a physician, and the William W. Backus Hospital, and from the denial of the plaintiff's motion to set aside the verdict. The plaintiff claims that the court erred in its charge to the jury by failing to relate the issues of abandonment of the plaintiff's decedent and of failure to provide follow-up care for her to the evidence in the case.

The following facts are not substantially in dispute. On July 11, 1973, at about 12:30 a.m., the plaintiff's[2] decedent, Dolores Jacques, was brought to the emergency room of Backus Hospital by her son. It was reported to the attending nurse that Mrs. Jacques, an alcoholic, had fallen down some stairs at her home while vacuuming and that she had lower abdominal pain. When she was admitted to the emergency room, Mrs. Jacques was intoxicated and had reportedly taken some valium. Mrs. Jacques was incontinent and uncooperative during her stay in the emergency room. She also had diarrhea.

The attending emergency room physician, Theodore deGroot, examined Jacques and found no bruises other than an old discolored bruise on her sternum. X-rays showed no damage to the spleen nor any fractured ribs. Thereafter, Carter came on duty in the emergency room. After consulting with deGroot, Carter examined Mrs. Jacques. After Carter had an extensive conver-

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The plaintiff, Bernard Jacques, is the widower of Dolores Jacques.

sation with Mrs. Jacques about the circumstances of her injury and her alcoholism, Carter concluded that it was not necessary to admit Mrs. Jacques to the hospital.

On July 15, 1973, an ambulance attendant, who had responded to a call from the Jacques home, found Mrs. Jacques lying naked on the bathroom floor. The attendant could not revive her. Mrs. Jacques was pronounced dead at Backus Hospital. In the death certificate, the medical examiner stated that the cause of death was intra-abdominal hemorrhage due to a ruptured spleen caused by fractured ribs.

The defense stressed the evidence that Carter had instructed Mrs. Jacques in the presence of her son, who had arrived in order to take his mother home, that if she had any further pain or diarrhea, she should come back to the hospital. The defense also stressed the evidence before the jury that on July 15, 1973, the president of the ambulance service, had received an hysterical call from Mrs. Jacques' teen-aged son asking him to send an ambulance quickly to the Jacques home because, as the son stated, "My father is beating the shit out of my mother."

The plaintiff's complaint, in the first count, alleged ten grounds of negligence and malpractice against Carter and, in the second count, alleged the identical ten grounds of negligence against Backus Hospital, together with an eleventh allegation that Backus Hospital failed to promulgate adequate emergency room standards for a case such as that of Mrs. Jacques.

The plaintiff claimed that the jury could have found one of three theories of causation: (1) that the fall on July 11, 1973, caused what is known as a delayed rupture of the spleen and that alone, when it finally ruptured, caused her death; (2) that she suffered no injury on July 11, 1973, but suffered a fractured rib and rup-

ture of the spleen and death (a) when she fell down on July 15, 1973, (b) when she was being resuscitated, or (c) when she was hit by her husband; or (3) she suffered both an injury on July 11, 1973, and a further contributing injury from (a), (b) or (c) above at a later date. The defendants, Carter and Backus Hospital, denied malpractice and negligence. Each defendant also claimed that Mrs. Jacques' death was caused by no act or omission of Carter or of Backus Hospital, but rather, was caused by a beating administered to Mrs. Jacques by her husband on July 15, 1973.

The trial was a complicated one which took sixteen trial days over the course of one month. There were thirty witnesses, including eighteen physicians. There were over seventy exhibits. There was lengthy testimony concerning causation as well as the applicable standard of care.

In paragraph 7 of the first count of the complaint, the plaintiff alleges that: "Dolores Jacques' death was caused by the failure of the defendant, Marie Carter, to exercise that degree of care and skill ordinarily and customarily used by physicians in the general community under all of the circumstances then and there present in that she . . . (b) abandoned the plaintiff, Dolores Jacques . . . and (j) failed to provide follow-up care for Dolores Jacques."

In paragraph 6 of the second count, the plaintiff repeated subparagraphs (b) and (j) as specifications of negligence against the defendant, Backus Hospital.

Concerning the allegation of abandonment, the plaintiff filed the following request to charge: "In Paragraph 7b of plaintiff's complaint, it is alleged that defendant, Dr. Carter, abandoned the patient Delores Jacques.

"You may recall that there was testimony that Mrs. Jacques was sent home with no other instruction other

than that she could return to the emergency room if she had any trouble. There was also testimony from Dr. Carter that the standard of care called for her to tell Mrs. Jacques to return if she continued to have pain and diarrhea. You may remember that Dr. Pratt testified that someone at her home should have been available to observe the patient and bring her back to the emergency room if her condition of diarrhea persisted or if new symptoms occurred. It is for you to decide whether any instructions were given at all, and if so, whether they were adequate under all the circumstances. If you find that they were not given or they were inadequate under the standard of care prevailing in the State of Connecticut in 1973, and that this failure was a substantial factor in the death of Delores Jacques, then you must find for the plaintiff on this count.

"You may also recall that there was testimony to the effect that on three occasions Mrs. Jacques telephoned the emergency room and asked for Dr. Carter, and that Dr. Carter did not return these calls. I charge you that a physician who has undertaken the treatment of a patient whose condition is such that without continuous or frequent expert attention he is likely to suffer injurious consequences, must either render such attention himself or see that some other competent person does so. . . .

"If you find that these calls were made, and that Dr. Carter made no effort to contact Mrs. Jacques, or to leave word as to instructions to be given her if she called again, and that this failure was a substantial factor in the death of Mrs. Jacques, then you must find for the plaintiff on this count."

Concerning the failure to provide follow-up care, the plaintiff filed the following request to charge:

"In Paragraph 7j of the complaint it is alleged that Dr. Carter failed to provide follow-up care for Mrs. Jacques.

"The testimony elicited from Dr. Carter is to the effect that she did not give any written or oral instructions for her care at home to a member of her family. You may find that the evidence shows that she told Mrs. Jacques that she could return to the emergency room if her symptoms persisted. There was also testimony, which you may believe, that she telephoned the hospital and asked for Dr. Carter on three occasions and that Dr. Carter did not return her calls.

"Dr. Pratt testified that it was imperative that a responsible member of her household be given instructions for her care and told her that she should be returned to the hospital if her pain and diarrhea continued.

"Should you find that if the instructions were given, and they were inadequate under the standard of care in Connecticut in 1973, or if no instructions for follow up care were given, and that this lack was a substantial factor in the death of Mrs. Jacques, then you must find for the plaintiff on this count."

The plaintiff filed identical requests to charge concerning the negligence counts against Backus Hospital.

The court, in its charge, gave an unexceptionable charge on the general standard of care of a physician and then listed verbatim from the plaintiff's complaint the ten specified ways in which the plaintiff claimed that Dr. Carter violated the requisite standard of care. The court then charged in customary language that if the plaintiff had proven one or more of the ten allegations of negligence, the jury would have to decide whether or not that act or acts were a substantial factor in causing Mrs. Jacques death. The court did not

mention one word concerning the evidence to relate the allegations to the facts in the case. The court did not further define abandonment and follow-up care nor did it relate the evidence in the case to them.

The court, in its charge on the second count, followed exactly the same course. The court elaborated slightly on the hospital's liability, pointing out to the jury that Backus Hospital was a small hospital with only about 226 beds and that its degree of care should be judged by similar hospitals. Again, however, the court did not give a legal definition of abandonment or failure to give follow-up care nor did it relate the facts of the case to either of these bases of liability.

The plaintiff made a specific exception to the charge as follows: "I think that in a case of this length, it is error for the Court not to make particular reference to some of the evidence on each of the allegations in the complaint. In a short case, perhaps it isn't necessary because the Jury may have it all in front of them, but in this case, I think it is necessary, and I take exception to Your Honor's failure to do that."

The applicable law is aptly summed up in the case of *Tough* v. *Ives,* 162 Conn. 274, 287, 294 A.2d 318 (1972), wherein the court stated: "The remaining attack of the plaintiff on the charge is that the court failed to relate properly the application of the law to her contentions of fact in the case. The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin,* 158 Conn. 75, 77, 255 A.2d 848 [1969]; *Worden* v. *Francis,* 153 Conn. 578, 579–80, 219 A.2d 442 [1966]. The extent to which a court should comment on the evidence is largely a matter within its sound discretion. *Worden* v. *Francis,* supra, 580; *Morosini* v. *Davis,* 110 Conn. 358, 363, 149 A. 371 [1930]. *In some cases, where the issues are complicated,*

peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose. *Corrievau* v. *Associated Realty Corporation,* 122 Conn. 253, 256, 188 A. 436 [1936]; *Heslin* v. *Malone,* 116 Conn. 471, 478, 165 A. 594 [1933]." (Emphasis added.)

In *Phoenix Mutual Life Ins. Co.* v. *Brinkman,* 148 Conn. 391, 397, 171 A.2d 194 (1961), the Supreme Court said that the trial court's failure to define estoppel for the jury led to the "result that the jury were called on to apply a legal doctrine of which they could not be expected to be cognizant."

"[It] is not the proper course for a judge to lay down the general principles applicable to a case and leave the jury to apply them, but it is his duty to inform the jury what the law is as applicable to the facts of the case." *Laukaitis* v. *Klikna,* 104 Conn. 355, 360, 132 A. 913 (1926). A charge must be considered as to its probable effect upon the jury in guiding them to a correct verdict. *State* v. *Gabriel,* 192 Conn. 405, 419, 473 A.2d 300 (1984). The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they may find to be established. Id.

In this case, the trial court did not give an adequate legal definition of abandonment or follow-up care.[3] Furthermore, the court did not relate the law on these

---

[3] The plaintiff claims as error that the court failed to guide the jury on how to apply the law to the evidence. We will treat this claim as including the court's failure to adequately set forth the legal definitions of abandonment and follow-up care. This court may address this issue as one encompassed within the plaintiff's claim of error or on our own motion. See Practice Book § 3063. Furthermore, it should be noted that the plaintiff, in his request to charge against both defendants, included an expanded definition of abandonment.

issues to the facts of the case. The issues in this case were complicated, peculiar, and capable of differing conclusions. An explanation of the law concerning abandonment and follow-up care as related to the evidence in the case was clearly necessary.[4] "We conclude that the court's charge did not meet the requirement that '[t]he instructions to the jury . . . be accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict.' *Berniere* v. *Kripps*, 157 Conn. 356, 358, 254 A.2d 496 (1969); *State* v. *Crowe*, 174 Conn. 129, 134–35, 384 A.2d 340 (1977)." *State* v. *Williams*, 182 Conn. 262, 269, 438 A.2d 80 (1980).

We find that it is reasonably probable that the jury was misled.[5]

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] The defendant claimed that the exception to the general rule should apply where the argument of counsel has clearly presented the case. The court stated in its charge that "Counsel have adequately presented the factual situation to you." We have, sua sponte, carefully examined the arguments of counsel and find no basis for the court's finding of an adequate presentation to the jury of the factual situation concerning abandonment and follow-up care of Mrs. Jacques. We do not, however, consider this argument for two reasons. First, the issues were not "clearly enumerated"; *Tough* v. *Ives*, 162 Conn. 274, 287, 294 A.2d 318 (1972); and second, the defendant Carter failed to comply with Practice Book § 3060G (c) by presenting the issue in her brief with appropriate references to the transcript for our consideration.

[5] While we have carefully examined the other claims raised by the plaintiff on appeal, due to our disposition of this case we find it unnecessary to consider them. It is unlikely that they will arise on retrial.