# KEVIN ROCHE-JOHN DINKELOO AND ASSOCIATES
## *v.* CITY OF NEW HAVEN ET AL.
### (12816)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued November 12, 1987—decision released January 12, 1988

*John C. Yavis, Jr.,* with whom was *Barry J. Waters,* for the appellant (defendant New Haven Coliseum Authority).

*Vincent J. Dowling,* with whom, on the brief, was *David A. Haught,* for the appellee (plaintiff).

GLASS, J. The defendant New Haven Coliseum Authority (hereinafter the Authority or the defendant) appeals from a judgment for the plaintiff architectural firm of Kevin Roche-John Dinkeloo and Associates (hereinafter Roche-Dinkeloo) after a jury trial. The defendant claims on appeal that the trial court erred in: (1) charging the jury with respect to the expert witnesses who testified at trial; (2) allowing the witness Carl Walker to testify; (3) directing a verdict for Roche-Dinkeloo on the breach of contract count in the Authority's counterclaim; (4) instructing the jury on the elements of fraudulent concealment; (5) failing to instruct the jury on equitable estoppel; and (6) refusing to rule that the statutes of repose set forth in General Statutes §§ 52-584 and 52-584a are unconstitutional. We find no error.

The jury could reasonably have found the following facts: In 1967, the Authority engaged Roche-Dinkeloo to design an arena, exhibition hall and parking garage in New Haven (the Coliseum). On October 26, 1967,

Roche-Dinkeloo retained LeMessurier and Associates of Cambridge, Massachusetts, as its structural engineering consultant. Roche-Dinkeloo's design called for a rectangular, four level, 2400-space parking garage to be built over the arena, with the first or lowest level of the garage serving as the roof of the arena. Each floor of the garage was a composite deck composed of a three layer application of steel, reinforcing steel bars and concrete. The main structure was situated on rocker bearings, and control joints were placed at the intersections of individual concrete slabs to accommodate expansion. The garage was open to the elements on the top and sides. Except for the ramps, the garage floors were designed to be level.

The facility was substantially completed on September 26, 1972, and on approximately that date the Authority commenced the use and occupancy of the garage. Between 1972 and 1978, the Authority discovered water pooling on the decks of the garage and cracks in portions of the concrete floors. In 1978 the Authority commissioned an independent study to review problems with the garage. That study revealed that the existing drains were clogged, and recommended that more drains be installed and a waterproof coating be applied to the parking decks. Another study was commissioned by the Authority in 1980, which recommended that the Authority close off certain areas of the garage, which had become unsafe due to corrosion.

On May 11, 1979, Roche-Dinkeloo brought an action against the city of New Haven to recover fees due under the contract, and on February 5, 1980, its motion to cite in the Authority as a defendant was granted. The city subsequently filed a motion for summary judgment and that motion was granted by the trial court. On September 12, 1980, the Authority filed an answer, special defense, and counterclaim in two counts, alleg-

ing breach of contract and negligence. Roche-Dinkeloo filed an amended answer to the counterclaim, asserting the statute of limitation as a special defense. The Authority filed a reply to the special defense, denying that the statute of limitation precluded the Authority's claims and pleading several matters in avoidance, including fraudulent concealment, equitable estoppel and breach of the continuing duty to warn. The Authority also asserted that General Statutes §§ 52-584 and 52-584a are unconstitutional. After a lengthy trial, the jury returned a general verdict for Roche-Dinkeloo on the second count of the Authority's counterclaim. The Authority moved to set aside the verdict, and the court denied the motion. The Authority appealed to the Appellate Court and this court transferred the appeal to itself.

I

The defendant's first claim is that the trial court erred in its instruction to the jury with respect to the expert witnesses who testified at trial. Specifically, the defendant claims that the trial court purported to summarize the evidence presented by the expert witnesses, but in doing so unfairly emphasized the testimony of the witnesses called by Roche-Dinkeloo, and improperly summarized some of the evidence favoring Roche-Dinkeloo. We disagree.

During trial, the Authority called three expert witnesses to testify: (1) Roger LeRoy; (2) Charles Thornton; and (3) Donald W. Pfeifer. Roche-Dinkeloo called at least eight witnesses to testify, including six expert witnesses: (1) Robert Victor; (2) Carl Walker; (3) George Torello; (4) William LeMessurier; (5) Frank Heger; and (6) Alan Deher. The expert testimony offered by these witnesses was complicated and highly technical, consuming more than one month of trial time.

In the charge, the trial court, *Zoarski, J.*, attempted to summarize the testimony of these witnesses. In so

doing, however, the trial court did not mention all of the witnesses at the trial. In particular, reference to the testimony of Pfeifer and LeRoy, two of the three experts called by the Authority, was omitted. The trial court summarized the testimony of six of Roche-Dinkeloo's expert witnesses.

Prior to summarizing the testimony, the trial court instructed the jury that "the weight to be accorded to the testimony of an expert witness depends upon your conclusion as to . . . the completeness of the facts considered by them" and whether there was a "sound basis upon which they could render the opinions that they stated." At the conclusion of the summary, the trial court stated that "each of these expert witnesses were cross-examined, and in many respects the opinions they rendered were questioned or challenged by the . . . Authority. Although the opinions were rendered, the question is ultimately the weight to be given to those opinions; whether you accept them and whether, in your opinion as jurors, you agree with those opinions that were rendered." The jury was also instructed to consider an expert's interest, bias, prejudice, frankness and candor in weighing his testimony. Finally, the trial court told the jurors to consider "what opportunity [the experts had] to analyze and study the garage, its design and its condition . . . [and whether this opportunity was] sufficient to reach the opinions or conclusions that they reached."

In attacking the court's comments on the evidence, the defendant claims that the instruction unfairly emphasized the testimony of Roche-Dinkeloo's expert witnesses and that the summation of the testimony of one witness, Walker, was misleading. We have held that "[t]he court's review of the evidence in its charge to the jury is subject to the overriding consideration that its comments be fair and that they not mislead the jury, so that injustice is not done to either party.

*Enlund* v. *Buske,* 160 Conn. 327, 331, 278 A.2d 815 [1971]; *Szlinsky* v. *Denhup,* 156 Conn. 159, 163, 239 A.2d 505 [1968]; *Ladd* v. *Burdge,* 132 Conn. 296, 298, 43 A.2d 752 [1945]. We have indicated that the nature and extent of the trial court's comments on the evidence, within constitutional limitations concerning trial by jury, must largely depend on the facts involved in a particular case and the manner in which it has been tried; and the matter of commenting on evidence rests in the trial court's sound discretion. *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594 [1933]." *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 589, 356 A.2d 873 (1975). " 'Instructions should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention.' *State* v. *Rome,* 64 Conn. 329, 339, 30 A. 57 [1894]; Maltbie, Conn. App. Proc. § 89." Id., 591; see also *Bruneau* v. *Quick,* 187 Conn. 617, 626–32, 447 A.2d 742 (1982).

We do not agree with the defendant that the court's comments on the evidence in this case were unfair. It is true that the court's commentary focused in greater detail on the testimony of witnesses who testified on behalf of the plaintiff. This fact alone does not render the instruction invalid, however, because we cannot say that this summary was prejudicially unfair to the defendant. *Anderson & McPadden, Inc.* v. *Tunucci,* supra, 593. The trial court first summarized the testimony of Thornton, an expert for the Authority. This summary set forth information regarding Thornton's background as a structural engineer, and then discussed his ultimate opinion that Roche-Dinkeloo did not meet the standard of care of architects during the period from 1968 to 1971. The basis for his opinion was also set forth, including the facts that: (1) there was

no pitch to the parking decks; (2) there were insufficient drains; (3) there were insufficient expansion or control joints within the parking decks; and (4) the use of a metal composite deck was improper due to the risk or danger of corrosion. At this point, the trial judge cautioned the jury that "[y]ou are, obviously to consider all of [the experts'] testimony, not just what I am telling you at this point." The trial court then summarized the testimony of six Roche-Dinkeloo experts, four of whom offered the opinion that proper maintenance would have prevented many of the problems the Authority encountered with the garage. The summary of the testimony of the two other Roche-Dinkeloo witnesses concerned the materials used in the design, and included the fact that both witnesses indicated their approval of the choice of materials made by Roche-Dinkeloo, when put into the context of the years in which those decisions were made.

Although a more balanced presentation of the evidence might have resulted had the trial court summarized the testimony of the two Authority witnesses it omitted, this fact alone does not invalidate the charge, nor does it "sink out of view" the claims or evidence on the Authority's side. See *State* v. *Rome,* supra, 334. The most detailed summary in the charge was that covering Thornton's testimony, which referred to many of the Authority's complaints regarding the garage design. Although more testimony offered by Roche-Dinkeloo was summarized, much of it covered the same facts. Moreover, the numerous cautionary instructions given by the trial court to consider all of the evidence indicate to us that the charge did not result in an invasion of the factfinding province of the jury.

The defendant also argues that the summary of the testimony of Walker was inaccurate and misleading. The defendant argues that Walker's conclusion was that Roche-Dinkeloo had not met the applicable stan-

dard of care and that the trial court's summary did not include this conclusion. The defendant suggests that Walker's testimony that "[he] would not have designed a level parking structure," supports this conclusion. We are not persuaded, however, that this testimony is equivalent to an opinion that Roche-Dinkeloo did not meet the appropriate standard of care. Furthermore, as noted above, the trial court's many cautionary instructions to examine all of the testimony, not only that recounted by the court, alleviated the risk that the jury would misinterpret the purpose of the summary.

## II

The defendant's second claim is that the trial court erred in allowing Walker to testify at trial. Specifically, the defendant claims prejudice because Walker's identity was not disclosed to the Authority until after five weeks of trial, and the Authority was not afforded an opportunity to depose Walker until the night before he testified at trial, at which time Walker was unresponsive. The fact that the Authority did not request a continuance to remedy the claimed disadvantage resulting from insufficient time to prepare for the examination of Walker is determinative of this claim. Had the Authority sought and been denied a continuance, we would address this claim further. *State* v. *Barrett,* 205 Conn. 437, 455, 534 A.2d 219 (1987). Under these circumstances, however, we decline to do so.

## III

The defendant's third claim is that the trial court erred in directing a verdict for Roche-Dinkeloo on the breach of contract count of the Authority's counterclaim. The trial court granted the directed verdict, ruling that: (1) the contract count did not sufficiently allege a cause of action; and (2) the Authority did not offer evidence of damages for breach of contract. As we find that the Authority did not offer appropriate evidence

to establish damages for breach of contract, we need not address whether the allegations in the complaint were sufficient to establish the cause of action.

"As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same position he would have been in had the contract been properly performed. *Bertozzi* v. *McCarthy*, 164 Conn. 463, 468, 323 A.2d 553 [1973]; *Sabo* v. *Strolis*, 148 Conn. 504, 506, 172 A.2d 609 [1961]. Such damages are measured as of the date of the breach. *Bachman* v. *Fortuna*, 145 Conn. 191, 194, 141 A.2d 477 [1958]; *Lee* v. *Harris*, 85 Conn. 212, 214, 82 A. 186 [1912]; 22 Am. Jur. 2d, Damages § 52. For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either '(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.' Restatement, 1 Contracts § 346 (1) (a), p. 573; see annot., 76 A.L.R.2d 805, 812 § 4." *Levesque* v. *D & M Builders Inc.*, 170 Conn. 177, 180–81, 365 A.2d 1216 (1976); see also 41 A.L.R.4th 131.

We agree with the trial court that the Authority did not prove damages sufficient to defeat the plaintiff's motion for a directed verdict. Although there was considerable evidence regarding the cost of repairs presently necessary to restore the Coliseum, careful review of the record indicates that the Authority offered no evidence as to cost of repairs at the time of the alleged breach. The costs presently necessary to repair the Coliseum are undoubtedly greater than

they would have been in 1978, in view of corrosion, wear and tear and the age of the structure. The trial court properly directed a verdict for Roche-Dinkeloo on the contract count.

## IV

Next, the Authority claims that the trial court erred in its instruction to the jury on the elements of fraudulent concealment. The Authority argues that the charge was contradictory, and that the trial court erred in its instruction as to whether a fiduciary relationship existed between the parties and whether an affirmative act of concealment was a necessary element of fraudulent concealment. We find that this claim was not properly preserved in the trial court, and therefore do not reach its merits.

Review of the record reveals that the Authority did not object to the portions of the charge of which it now complains. The Authority excepted to two parts of the charge on fraudulent concealment. First, the Authority claimed that the trial court improperly instructed the jury regarding the standard of proof necessary to prove a fraudulent concealment; and second, that the trial court improperly instructed the jury that the reliance element is necessary to the claim of fraudulent concealment. The Authority did not except to the trial court's instructions regarding the fiduciary relationship or the necessity of an affirmative act as an element of fraudulent concealment. This claim, therefore, was not "distinctly raised at trial"; *Holbrook* v. *Casazza,* 204 Conn. 336, 354, 528 A.2d 774 (1987); *State* v. *Rogers,* 199 Conn. 453, 461, 508 A.2d 11 (1986); and we need not address it further.

## V

The defendant's two final claims of error are that the trial court erred (1) when it failed to charge the jury

on equitable estoppel, and (2) when it failed to rule that the statutes of repose set forth in General Statutes §§ 52-584 and 52-584a are unconstitutional. The plaintiff contends that review of these claims is precluded by the general verdict rule. We agree.

In discussing the plaintiff's contention that the general verdict rule precludes appellate review of these issues, the defendant states in its reply brief that "[i]f the Court agrees that the trial court erred with respect to the summation of expert testimony, or in directing a verdict on the contract count, the Court should proceed to consider the trial court's alleged error on Roche-Dinkeloo's statutes of limitation defenses and the matters the Authority raised in avoidance of those statutes." We have not found error, however, and will apply the general verdict rule, as the defendant suggests is proper under these circumstances. Thus, we will "presume that the jury found every issue in favor of the prevailing party." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987).

There is no error.

In this opinion the other justices concurred.