TERRY BUSHY ET AL. *v.* GEORGE E.
FORSTER ET AL.
(12729)

O'Connell, Spear and Hennessy, Js.

Argued September 25—officially released November 19, 1996

*Herbert Watstein,* for the appellants (plaintiffs).

*Anthony J. Pantuso III*, with whom, on the brief, was *Charles M. Fresher*, for the appellees (defendants).

SPEAR, J. The plaintiffs, Terry Bushy and her husband Robert Bushy, appeal from the judgment rendered in favor of the defendants after a jury trial. She claims that the trial court improperly failed to adapt the jury charge to the issues, pleadings and evidence of the case. We agree and reverse the judgment of the trial court.[1]

The plaintiffs filed a three count complaint, sounding in negligence, loss of consortium and nuisance. The gravamen of the plaintiffs' claim was that the defendants negligently allowed water from a roof to discharge and drain onto a driveway surface, where the water froze and created a dangerous and hazardous condition. The plaintiffs also claimed that the drainage system created an absolute private nuisance.

The plaintiffs claim that the evidence established the following. The plaintiffs leased an apartment located at 24 Missal Avenue in Bristol from the defendants, George Forester and Judith Forster. The written lease provided that the defendants were responsible for repairs and maintenance of the property, including the drainage system. Horizontal gutters on the building directed water from the roof into downspouts, one of which discharged onto the driveway.

On January 4, 1988, the temperature rose above freezing and snow that had fallen earlier that day melted. On January 8, 1988, the temperature fell below freezing. That same day, Terry Bushy left her job early because

---

[1] The plaintiffs raised two other claims on appeal: whether the trial court improperly failed to instruct the jury that the landlord had a duty to keep the premises and appurtenances fit and habitable in accordance with General Statutes § 47a-7 (a) (2), and whether the trial court improperly failed to instruct the jury in accordance with the plaintiffs' requests to charge. While we have carefully examined the plaintiffs' claims, due to our disposition of their first claim, we find it unnecessary to consider them. It is unlikely that they will recur on retrial.

it was snowing and went home. She parked her car at the end of the driveway and shoveled the driveway from her car to the entrance of the building. She went inside her apartment for a short time. While she was inside, snow continued to fall and accumulate. On her way back outside, she slipped on a patch of ice and fell. As a result of her fall, she suffered injuries, including a severe fracture to her right ankle that required surgery.

The defendants denied the plaintiffs' allegations and filed special defenses,[2] essentially alleging that Terry Bushy was contributorily negligent.

At trial, the parties offered conflicting testimony as to the location and cause of the fall. The plaintiffs offered evidence to show that Terry Bushy slipped on a patch of ice that was under the downspout that discharged onto the driveway. In addition, the plaintiffs claimed that the defendants had notice that the drainage system on the property discharged water onto the paved driveway. The plaintiffs' expert witness, Charles McSheffery, testified that, in general, a downspout should not, for safety reasons, discharge onto a paved area where it is possible that the discharged water may freeze. He further testified that the drainage system on the property created a dangerous and hazardous condition, which exposed the plaintiffs to the danger of slipping and falling during cold weather when the discharged water could freeze on the driveway surface. In addition, McSheffery testified that the condition could have been

---

[2] The defendants claimed four special defenses. First, they alleged that Terry Bushy's injuries were caused by her own carelessness and negligence in shoveling the driveway. Second, they alleged that her injuries were caused by her "own negligence in failing to remove snow from the driveway." Third, they alleged that her injuries "were caused by [her] breach of the leasing agreement which . . . obligated [her] to remove snow from the premises." Finally, the defendants claimed that if the jury did award the plaintiffs damages, "the defendants are entitled to a reduction in any such award for any collateral source benefits paid . . . ."

easily remedied by either relocating the downspout in question or directing the flow of water onto the lawn.

The defendants, on the other hand, presented evidence at trial that under the terms of the lease, the plaintiffs were solely responsible for snow removal. Evidence was also adduced to show that Terry Bushy fell at the bottom of the ice covered steps leading outside, and not on an ice patch at the base of the downspout on the driveway. The defendants claimed that she was aware of the ice before she fell, and that she fell because she was tired, not paying attention, suffering from arthritis and was wearing well-worn sneakers. In addition, the defendants argued that the plaintiffs did not offer sufficient evidence to prove that water from the downspout actually discharged onto the driveway. Furthermore, the defendants claimed that even if water did discharge onto the driveway surface, they did not have actual or constructive notice of the condition.

The plaintiffs filed numerous requests to charge, most of which were adapted to the facts of this particular case. The court, however, declined to adapt its charge to the particular evidence presented and merely gave general instructions on the law applicable to the case.

The plaintiffs excepted to the trial court's instructions, claiming that "there should have [been] some reference to some of the evidence . . . . The court could have clarified and related some of the evidence to the charge." In response, the court stated, "It is this court's policy not to comment on the evidence." The court provided the jury with copies of the lease, complaint, answer and special defenses, and instructed the jury to examine the allegations to determine whether the parties had proven their claims.[3]

---

[3] The court stated, "As to the pleadings. You're going to have in the jury deliberation room with you the pleadings. . . . Now in this case, [Terry Bushy] has alleged two theories of liability against the defendants in her complaint. Count one is in negligence. Count three is in nuisance. . . . I

The plaintiffs assert that the trial court improperly failed to adapt the jury charge to the issues, pleadings, and evidence introduced at trial. We agree.

"The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. . . . In satisfying this purpose, the charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . . While the degree to which reference to the evidence may be called for lies largely in the discretion of the court . . . an allusion to it is required sufficient to furnish a practical guide to the jury as to how the stated law is to be applied to

am not going to read all the allegations of the complaint to you, but I will point out to you that you must look at the complaint and see if the evidence supports any of the allegations of the complaint . . . . I would point out to you that as you review the complaint, allegation ten spells out what the claims of negligence are by the defendants. That's what the plaintiffs claim the defendants did wrong. So, look at allegation ten. Basically, the defendants deny allegation ten, deny that they did anything wrong to cause the fall. Allegation eleven spells out what the plaintiffs claim [the] injuries were and basically the defendants leave the plaintiffs to [their] proof as to the allegations of injury. . . . You'll see that the third count is a count in absolute nuisance. I will go over that with you when I describe what nuisance is. You will have a copy of the defendants' answer and you will note in the defendants' answer that they set forth special defenses. Of course, the special defenses are denied by the plaintiffs and you'll have a copy of that denial. But, essentially what the defendants say in their special defenses are that in the first special defense, they say that any injuries and damage suffered by the plaintiffs were caused by the carelessness and negligence of the plaintiff, Terry Bushy, in one or more of the following ways: A, in that she failed to keep a proper lookout for her own safety, and B, that she failed to watch where she was going and failed to watch where she was placing her feet. And, C, that she failed to make reasonable and proper use of her senses. And there's further, there's D, E and F, and I'm not going to read the entire account. You'll have it with you in the jury room. The second special defense is that the injuries and damages suffered by [Terry Bushy] were caused by her own negligence and failure to remove snow from the driveway. And then there's a third special defense. Again, you're going to have those documents in the jury deliberation room with you and you will be able to review them in more detail, at that time."

the evidence before them." (Citations omitted; internal quotation marks omitted.) *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 255 A.2d 848 (1969). " '[T]he function of a judge's charge is to enable the jury to find its way through the maze of conflicting testimony [and] to sift the relevant from the irrelevant . . . ." *Anderson & McPadden, Inc.* v. *Tunucci*, 167 Conn. 584, 590, 356 A.2d 873 (1975). " '[It] is not the proper course for a judge to lay down the general principles applicable to a case and leave the jury to apply them, but it is his duty to inform the jury what the law is as applicable to the facts of the case.' " *Jacques* v. *Carter*, 2 Conn. App. 27, 34, 476 A.2d 621 (1984), quoting *Laukaitis* v. *Klikna*, 104 Conn. 355, 360, 132 A. 913 (1926).

We have held that "where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is *necessary.*" (Emphasis added.) *Jacques* v. *Carter*, supra, 2 Conn. App. 33–34. The defendants assert that, in this case, comment was unnecessary because the issues before the jury were uncomplicated, clearly examined during trial, and adequately presented during closing arguments. See *Bruneau* v. *Quick*, 187 Conn. 617, 629, 447 A.2d 742 (1982); *Anderson & McPadden, Inc.* v. *Tunucci*, supra, 167 Conn. 584; *Tough* v. *Ives*, 162 Conn. 274, 287, 294 A.2d 67 (1972); *Vita* v. *McLaughlin*, supra, 158 Conn. 77; *Heslin* v. *Malone*, 116 Conn. 471, 165 A. 594 (1933).[4]

---

[4] The present case, however, is unlike those cited by the defendants. For example, in *Tough* v. *Ives*, supra, 162 Conn. 289, the trial court referred to the plaintiff's allegations and "made sufficient reference to the claims of the parties to guide the jury adequately in the application of the principles of law to the facts involved." The *Tough* court noted that if the trial court had in fact instructed the jury as requested by the plaintiff, "it would have been [impermissibly] indulging in an argumentative presentation of the claims of only one side." Id., 290. In *Bruneau* v. *Quick*, supra, 187 Conn. 631, *Anderson & McPadden, Inc.* v. *Tunucci*, supra, 167 Conn. 584, and *Heslin* v. *Malone*, supra, 116 Conn. 477, the issue was not whether the trial court improperly failed to adapt its instructions to the facts of the particular case, but rather, whether the court improperly commented on one party's

This case is analogous to *Vita* v. *McLaughlin,* supra, 158 Conn. 78, where our Supreme Court set aside the judgment of the trial court and ordered a new trial because "the [trial] court recited certain principles of law with no attempt to relate the law to the pleadings and the evidence offered by the parties." In that case, the minor plaintiff filed a negligence action against the defendant, who pleaded the special defenses of contributory negligence and assumption of the risk. During its charge, the court instructed the jury to read the pleadings during its deliberation, but failed to discuss the specific allegations made by either party. In reversing the judgment, the Supreme Court held that "[e]ven if we were to assume that the court correctly stated the rules of law in the abstract, with no further instructions applying the rules to the particular facts of this case, such a charge could not adequately serve to guide the jury in a determination of the duty resting upon the defendant, nor could it adequately guide them in determining the application to the minor plaintiff of the rules of law relating to assumption of risk and contributory negligence." Id., 78. In the present case, the court also declined to adapt the charge to the evidence and merely referred the jury to the pleadings.

Our Supreme Court has held that, in determining whether jury instructions that do not relate the facts of the case to the law are proper, the reviewing court must "consider whether the issues in the case are complicated." *State* v. *Lemoine,* 233 Conn. 502, 515, 659 A.2d 1194 (1995). In *Lemoine,* our Supreme Court held that, despite the trial court's failure to relate the specific facts to the legal issues in its charge, the court's charge was proper because the evidence was uncomplicated.[5]

---

case more thoroughly than the other's, thus resulting in an argumentative presentation of the case.

[5] In *Lemoine,* in which the court found that the evidence introduced at trial was uncomplicated, Lemoine was charged with nine counts: sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1)

Id., 515; see also *Corrievau* v. *Associated Realty Corp.*, 122 Conn. 253, 256–57, 188 A. 436 (1936); *Crane* v. *Hartford-Connecticut Trust Co.*, 111 Conn. 313, 316, 149 A. 782 (1930); *Morosini* v. *Davis*, 110 Conn. 358, 363–64, 148 A. 371 (1930).

We disagree with the defendants' characterization of this case as "uncomplicated." The plaintiffs were seeking recovery under two different theories, and the defendants relied on four special defenses. During his opening arguments, defense counsel repeatedly cautioned the jury that the case was complex and confusing.[6] The only issue that the parties agreed on was the fact that Terry Bushy fell somewhere on the property and sustained injuries. Virtually every other fact and issue in the case was contested and the parties introduced conflicting evidence on nearly every allegation.

(A), sexual assault in the third degree in violation of § 53a-72a (a) (1) (B), risk of injury to a child in violation of General Statutes § 53-21, two counts of assault of a peace officer in violation of General Statutes (Rev. to 1991) § 53a-167c (a) (1), two counts of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and two counts of reckless endangerment in violation of General Statutes § 53a-63. The various counts pertained to three completely separate and distinct episodes and "it [was] impossible that the jury could have intermingled or confused the evidence . . . ." *State* v. *Lemoine*, supra, 233 Conn. 514. Furthermore, the court found that it was not reasonably possible the jury was misled by the trial court's instructions. The jury was instructed on the general principles of law applicable to a criminal case, the elements of the crimes charged, and then the court emphasized in its instructions to which victims each charge applied. The information, which the jury had during its deliberations, also clearly stated the state's allegations. Id.

[6] During opening arguments, defense counsel made the following statements: "[W]hen you look [at] the circumstances behind the fall, the reasons for the fall . . . [are] complex . . . . You will be presented with a lot of evidence . . . by both the plaintiffs and myself. . . . Now, we would submit that by the close of this evidence, you will be convinced either that [Terry] Bushy did not fall where she said she fell or you will be so confused as to where she fell . . . . [T]he third question is, why did she fall? I believe that this is probably going to be the most confusing of the issues presented to you . . . . I also believe that there's a possibility that you're going to be so confused by the evidence presented to you that you're not going to be able to conclude anything . . . ."

Accordingly, we conclude that, due to the nature of this case, the court had a duty to adapt the evidence to the legal issues in its charge to the jury.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.