[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE
This malpractice action against a podiatrist against Dr. Richard Aronoff, resulted in a defendant's verdict.
The plaintiff has filed a motion to set the verdict aside on the grounds:
1. It was contrary to law.
2. It was against the evidence.
At the hearing on the motion, counsel for the plaintiff, Mildred Gombos, indicated that he was not waiving any of the claims set forth in the motion, but his main thrust seems to have been that in commenting on the evidence, the court unfairly slanted its comments in favor of the defendant.
The claims in this case arose out of the defendant's surgical treatment of a bunion deformity on the plaintiff's right foot. The complaint alleged that as the result of the defendant's negligent treatment, the plaintiff suffered a severe and lasting infection of her right foot. In addition, the complaint alleged that the defendant failed to obtain plaintiff's informed consent to proceed with the surgery.
As noted counsel's argument in support of the motion to set aside the verdict, charged that with respect to a number of issues, the court in its comments, practically directed a verdict in favor of the defendant.
Specifically, one of the issues advanced by plaintiff's counsel was that the defendant should not have proceeded with the surgery without having obtained medical clearance from the plaintiff's family physician, a Dr. Garafalo, because of the plaintiff's elevated blood sugar level; that the court failed to comment that a Dr. Sica, whom the defendant casually met in a parking lot, suggested the defendant talk with the plaintiff's family physician about the elevated blood sugar level: and, that the court failed to comment that a Dr. Menacher called by the plaintiff, testified that the blood sugar level was important. CT Page 5854
The charge of unfair comment is made because the court instructed that the defendant did have some concern with the elevated blood sugar level and referred the plaintiff to a Dr. Laterra, an expert surgeon in the vascular field, who tested the plaintiff and opined that the important factor in protecting against post-operative infections was not so much the blood sugar level, but the blood circulation, and it was Dr. Laterra's opinion that the plaintiff's blood circulation was sufficient to go ahead with that surgery. It was Dr. Laterra's opinion which the defendant relied upon in proceeding with the surgery.
In passing, the court notes that it did charge that Dr. Sica suggested that the defendant talk with the plaintiff's family physician.
Plaintiffs' counsel next argues that, in discussing the allegation that the defendant failed to make "suitable" arrangements for the attendance of another physician, when he had to go to Fort Dix, the court charged that it was its (court's) recollection that the defendant arranged for a Dr. DeRose to cover for him, and that it was up to the jury to determine whether "suitable" arrangements had been made to attend to the plaintiff in the defendant's absence"
Counsel next argued, that, in discussing proximate cause, the court unfairly commented that if the jury found that the infection would have resulted anyway, regardless of whether the defendant exercised the requisite care or skill of a practicing podiatrist, then it could not find that the defendant's negligence was a substantial factor in causing the infection.
Counsel next argues that the court's instructions on the Count of informed consent were one-sided. With respect to this issue, the court charged as follows:
"Now there is another Count here and we call that informed consent. The plaintiff claims that — somewhere along here the plaintiff claims — Yes, we have it. The plaintiff claims that Dr. Aronoff didn't properly inform her of the things involved in the procedure — the risks, so forth. What our law on informed consent says that the law imposes as duty upon a physician to disclose to his patient all relevant information he knows or should know that a reasonable patient would consider material in deciding whether or not to undergo the proposed treatment. The disclosure should CT Page 5855 include — one, the nature of the procedure. The podiatrist should explain what he is going to do. Two, she should explain the risks and hazards of the procedure. Three — the alternatives to the procedure. Alternatives, I don't know what you can decide about any alternatives to this procedure. As far as I can see, the alternative was not to go ahead with it and I would doubt that a physician would explain the risks and hazards of not going ahead. At any rate, the risks, the alternatives are one of the things that the doctors, the podiatrists, should explain and the anticipated benefits of the procedure. Part of a physician's overall duty to a patient is to disclose, in language a lay person can understand, information that he has or should have concerning the nature of the risks of proposed treatment and all viable alternatives with any dangers involved therein which are material to an intelligent choice by reasonable person such as the patient, the plaintiff in this case.
Now there is a dispute about some of the facts in the informed consent in this case. The plaintiff admits, I'm talking about plaintiff's Exhibit C which is the form of informed consent, that the plaintiff signed preparatory to the surgery that was going to be performed on January 20, 1990 when the bunionectomy was performed and you are going to have this, it's an Exhibit. You can go over it to your heart's content The plaintiff signed this and she testified, as I recall, that she read it and it says — says Dr. Aronoff had explained to me at a previous visit in clear, understandable language the operation which is to be performed on my right great toe to help relieve symptoms of — something, I can't read it. He has marked the diagrams on the back of these pages in my presence today so that I have a good understanding about what he planned to do. The names of the procedure are excision on nail and chemical — maybe you can read this better than I can — for permanent removal of right — permanent removal of right great — I don't know whether it says toe or not. I don't recall that that was going to be done. It was going to be a bunionectomy. They were going to remove part of that bunion. At any rate, there is a diagram on it showing the right toe. Now there is a dispute about this. Dr. Aronoff testified not only did she sign this and read it but he explained in detail about what was involved. The Plaintiff, Mrs. Gombos, disputes that. She says he didn't explain anything to her. He just had her sign the informed consent. So, there is a question. You are going to have to determine which one you are going to believe in that respect. But then this Exhibit, the informed consent Exhibit, goes on to say — I understand that CT Page 5856 operations sometimes don't work out as planned but having discussed and/or attempted various alternatives to surgery I wish to go ahead in hopes of achieving satisfactory results. And I'm not going to go over the whole thing. You will have it. You can go over it, spend as much time with it as you need. Also gives permission to use anesthetic. Considering all of the above, I am satisfied that Dr. Aronoff has provided me with ample disclosure of all relevant facts and sufficient opportunity for me to question him so that I might make an informed or reasoned consent to my foot surgery.
Now I said before that I don't know about the alternative of — viable alternatives but on the second page of that it does explain alternative methods of treatment and it talks about wide shoes, change of shoe gear, periodic care, antibiotics, strapping, orthotic shoe inserts, change of occupation, injections and other things as alternatives. And then finally talks about possible complications. Says one — infection and/or inflammation of operated areas, delay or non-healing of incisions, excessive bleedings, loss of toe or foot, failure of procedure or recurrence. In other words, what this informed consent actually says there is no guaranty that this is going to be successful, there might be complications, certain things might happen, you know. And the plaintiff signed it. Says she read it. She denies that Dr. Aronoff explained these things to her. Went over it with her in detail. He says he did. So based on this here and based on what they have testified, which one are you going to believe? I'll give you some rules with respect to this informed consent. Every normal human being of adulthood has the right to determine what shall be done with his or her own body. It is the prerogative of the patient, not the doctor, to determine for herself the direction in which her interests lie. This duty to inform the patient is a separate and distinct duty from that to diagnose and treat a patient's ills and may be a basis for imposing liability on the physician even though the treatment afforded conformed to the required standard. In other words, put it another way, if you find that under the First Count the treatment was in accordance with the care and skill that is to be expected in Dr. Aronoff, this is a different cause of action and there my be liability if she wasn't sufficiently informed even though his treatment was what it should have been. The extent of disclosure of risks and available alternatives is measured by the patient's needs. Was the information material to the patient's decision to undergo the treatment when she consented. The physician's duty to inform the patient is not dependent upon the CT Page 5857 patient's requests for disclosure. A physician is not privileged to withhold information from the plaintiff merely because the divulgence might prompt the patient to forego treatment which the doctor feels the patient really needs. A risk is material when a reasonable person and what the physician knows or should know about the plaintiff's position would attach significance to the risk in deciding whether to forego the proposed theory or treatment. So what I am telling you is any risks that are disclosed or should be disclosed are material when a reasonable person, not necessarily this plaintiff or any other plaintiff or any other person, a reasonable person would attach significance to that risk in deciding whether they want to go through with the treatment. So the plaintiff has the burden of proving not only an unjustified failure to disclose the risk of a proposed course of treatment, that also such failure was the proximate cause of her injury. So, again, we see proximate cause. I'm not going to go over the definition of that again. I have already done it. Just recall what I said about that.
Under the Second Count the plaintiff not only has the burden of proving that there was an unjustified failure to disclose the risk so she could make an informed consent but also that such failure was a substantial factor in causing her injury. Now as I told you before, I will repeat it because it is important, the particular patient's reaction, had she received the information as to the risk involved, is not the governing one with respect to the duty to inform. It is not the particular patient's reaction on that issue. The standard is what a reasonable person in the plaintiff's position would have decided if suitably informed of all of the material perils bearing significance. The occurrence of the risk naturally must be harmful to the patient. The injury must be measurably greater than the injury that would have occurred if the patient had been fully informed and refused to consent to this treatment, this modified McBride bunionectomy.
So, these are the rules. The evidence, I will again call to your attention, is Dr. Aronoff said that not only did she sign this informed consent which outlines all of the things, you will see it, she read it, she admitted that she read it but he went over it in detail with her. That, she disputes. She said he didn't do it. He didn't say a word to her. So under those rules you will have to determine under the Second Count, which is the account of informed consent, whether the patient was properly informed so that she could have proper informed consent to going ahead with the procedure." CT Page 5858
Counsel next argues that in telling the jury that there was no allegation of osteomyelitis and that it hadn't been proved anyway, the court took this claim out of the case. The complaint, in fact, does not mention osteomyelitis. In addition, since there was a defendant's verdict error may not be ascribed to claims of injury or damage.
Finally, counsel argues that, in discussing the claims for permanent injury, the court unfairly stated that there was no evidence of any percentage incapacity. The simple fact is that there was no such evidence.
"A jury charge must be correct in law adopted to the issues and sufficient for the guidance of the jury (citations omitted) — a charge is not to be critically dissected for purposes of ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law" Ellice v. InaLife Ins. Co. of NewYork, 218, Conn. 218, 226. These precepts are particularly true as related to a trial court's comments on the evidence. See,Anderson McPadden v. Tumucci, 167 Conn. 584 at pages 589, 590, 591 593, 593. "The degree to which reference to the evidence may be necessary lies largely in the discretion of the court."Tezach v. Fisman Sons, Inc. 173 Conn. 183, 186.
In this case, the court attempted to discuss as fairly and dispassionately as it could, the claims of each party with respect to disputed issues. This was particularly true as pertains to the claim of lack of informed consent. In addition, the court in a number of instances stressed that it was the jury's function to find the facts and it was the jury's recollection of the facts which controlled, not the courts.
The court is unable to agree that its charge was so one-sided, slanted or unfair, as to be tantamount to a direction to the jury to find for the defendant. Taken as a whole, the court finds its charge to have been balanced and to have left it to the jury to find the facts, without placing undue emphasis on either side of the case.
The Motion to Set Aside the verdict is denied.
MILTON H. BELINKIE CT Page 5859 JUDGE TRIAL REFEREE