STATE OF CONNECTICUT *v.* ROBERT PULLEY
(AC 14644)

Dupont, C. J., and O'Connell and Landau, Js.

Argued April 30—officially released August 26, 1997

*Tovah Kasin*, legal intern, with whom were *Timothy H. Everett*, *Todd Fernow* and *Jorge Jacobo*, legal intern, and, on the brief, *Brian Kornbrath*, for the appellant (defendant).

*Eileen McCarthy Geel*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger Dobris*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (2). The defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal, (2) instructed the jury on larceny in the second degree, and (3) admitted testimony relating to the defendant's arrest for breach of peace. In addition, the defendant claims that he is entitled to a new trial because he was prejudiced by a defective charging document. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, who was sixty years old at the time of the trial, was a resident of the Elm City public housing project in New Haven, and a parishioner of the defendant's Christian Outreach Church. Because she had been legally deaf from the time she was eleven years old, she received Social Security disability benefits and supplemental security income (SSI). She also received subsidized housing from the New Haven housing authority. The defendant, a Pentecostal minister, was the pastor of the Christian Outreach Church, which was located within walking distance of the victim's home.

In the spring of 1992, the Social Security Administration challenged the victim's eligibility for SSI benefits because she maintained two savings accounts. The victim asked the defendant for advice, and, thereafter, the defendant accompanied the victim to a meeting with SSI officials.

On May 1, 1992, the victim withdrew all her money from her two savings accounts, taking $5958.73 from one account, and $1451.03 from the second account. The victim held the money for a brief time, but was concerned about the security of that amount of cash in her home. She discussed her concerns with the defendant and he suggested that she deposit the money in the Christian Outreach account. Although the victim questioned why the money would not be in her name, the defendant assured her that she could have her money back at any time. The victim unequivocally maintains that the money was not a donation to the church.

On May 14, 1992, the defendant drove the victim to his bank's drive up window where she handed approximately $7600[1] in cash to the defendant who deposited it in church accounts. The state contends that the crime of larceny in the second degree took place at that time.

At the time the deposit was made, the Christian Outreach Church was in bad financial condition. Foreclosure proceedings were pending against the church building and its checks had been returned for insufficient funds. In early 1993, the victim requested the return of her money on several occasions. She

---

[1] We note that the amount that the victim gave the defendant was in conflict. The victim testified on direct that she gave him $10,600, but on cross-examination, testified that she gave the defendant $8600. In any event, the defendant's bank records indicate that $7600 was deposited in his account on May 14, 1996. Because that amount exceeds the threshold for conviction of larceny in the second degree, we need not resolve the question of the amount that the victim gave the defendant.

approached other ministers and the bishop of the Christian Outreach Church, but did not receive her money. On March 7, 1993, when the victim demanded the return of the money from the defendant an altercation took place and the defendant was arrested for breach of the peace.[2] After the altercation, the defendant promised to return the victim's money the next day. He did not do so and explained to the victim that he "used some of it." As of the date of trial, no repayment had been made.

I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal because there was insufficient evidence to prove his intent to steal. The thrust of the defendant's argument is that the facts showed an embezzlement, not a plain larceny and, therefore, the trial court improperly failed to instruct the jury on the elements of embezzlement. As a result, the defendant contends that the jury was allowed to consider the uncharged crime of embezzlement.

Under our penal code, embezzlement is not a separate and distinct crime from larceny. Our statutes are organized so that a general definition of larceny is contained in General Statutes § 53a-119.[3] That statute then includes fifteen subdivisions each defining a common method by which larceny may be committed.[4]

---

[2] The breach of the peace charge was subsequently nolled.

[3] General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[4] Larceny, as defined in General Statutes § 53a-119, includes but is not limited to: (1) embezzlement, (2) obtaining property by false pretenses, (3) obtaining property by false promise, (4) acquiring property lost, mislaid or delivered by mistake, (5) extortion, (6) defrauding of public community, (7) theft of services, (8) receiving stolen property, (9) shoplifting, (10) conversion of a motor vehicle, (11) obtaining property through fraudulent use

A significant distinction between traditional larceny and larceny by embezzlement applicable to the present case is the time when the intent existed to deprive the owner of the money, i.e., steal. If the wrongdoer intends to steal the property at the moment it comes into his possession, it is a traditional larceny. By contrast, if the wrongdoer receives the property honestly and at a later time forms the intent to steal it, a larceny by embezzlement has taken place.[5] In the present case, the parties are not in agreement concerning the time at which the intent to steal existed. The defendant argues that it did not arise until he failed to return the money to the victim. The state argues, to the contrary, that the defendant possessed the intent to steal the money at the moment he received it from the victim. This was a question of fact for resolution by the jury and the jury resolved it against the defendant.

A specific intent to deprive or to misappropriate is an essential element of larceny. *State* v. *Fernandez*, 198 Conn. 1, 20, 501 A.2d 1195 (1985). " 'A person's intention in any regard is to be inferred from his conduct' . . . and ordinarily can be proven only by circumstantial evidence." *State* v. *Vars*, 154 Conn. 255, 263, 224 A.2d 744 (1966). The conduct of the defendant subsequent to May 11, 1992, may be taken into consideration by the jury in determining the defendant had the intent to steal when he received the money from the victim. *State* v. *Croom*, 166 Conn. 226, 230, 348 A.2d 556 (1974).

"[W]e have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. *State* v. *Salz*, 226 Conn.

---

of automated teller machine, (12) library theft, (13) conversion of leased property, (14) failure to pay prevailing rate of wages, and (15) theft of utility service.

[5] General Statutes § 53a-119 (1) provides: "Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody."

20, 31, 627 A.2d 862 (1993). First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. Id. That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. *State* v. *Carpenter*, 214 Conn. 77, 79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992)." (Internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 570, 638 A.2d 578 (1994).

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the financial condition of defendant's church and his conduct after he received the victim's money was sufficient for the jury reasonably to conclude that he possessed the intent to deprive the victim of her property when he received it. The cumulative force of the evidence allowed the jury to conclude that the defendant was guilty of larceny in the second degree. Id.

The defendant complains that the trial court did not instruct the jury on embezzlement. This claim has no merit. "It has long been recognized by both the United States Supreme Court and our Supreme Court . . . that the prosecutor has broad discretion in determining what crime or crimes to charge in any particular situation. . . . The discretionary power of the state to select an appropriate charge is, of course, limited in the usual and lawful manner by the facts the prosecutor may be reasonably expected to prove at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Menzies*, 26 Conn. App. 674, 680–81, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992).

In the case before us, the state was of the opinion that plain larceny and not embezzlement was the proper charge. "So long as [the prosecutor] acts within the jurisdiction of his office, it is not appropriate for a court to set policy for the performance of his prosecutorial function." *State* v. *Haskins*, 188 Conn. 432, 474, 450 A.2d 828 (1982).

The state elected to charge the defendant with larceny in the second degree, and the court instructed the jury on the elements of that crime. The defendant cannot complain because the trial court did not instruct the jury on a crime with which he was not charged. The trial court's charge on larceny in the second degree was correct in the law and the jury is presumed to follow the instruction. *State* v. *Nelson*, 17 Conn. App. 556, 558, 555 A.2d 426 (1989).

II

The defendant next argues that he is entitled to a new trial because the trial court, in its jury instruction, failed to relate the law to the facts. "Our Supreme Court has held that, in determining whether jury instructions that do not relate the facts of the case to the law are proper, the reviewing court must consider whether the issues in the case are complicated." (Internal quotation marks omitted.) *Bushy* v. *Forster*, 43 Conn. App. 578, 584, 684 A.2d 739 (1996); *State* v. *Lemoine*, 233 Conn. 502, 511, 659 A.2d 1194 (1995). The issues in this case were not complicated. The jury need only determine, on the basis of sufficient evidence, whether the defendant (1) intended wrongfully to deprive the victim of an amount of money greater than $5000 when he received it and (2) did so deprive the victim of her property. Accordingly, we conclude that the jury was not misled by the trial court's failure to relate the law to the facts of this case.

## III

The defendant next claims that the trial court abused its discretion by improperly admitting evidence of the defendant's arrest for breach of peace after a confrontation with the victim. The defendant, seeking to prevent presentment of evidence of the arrest, stipulated with the state that the facts presented would be that "[o]n March 7, 1993 at the Christian Outreach Church services at the Holiday Inn at 30 Whalley Avenue in New Haven the defendant, Robert Pulley, and [the victim] had a confrontation." Despite this stipulation, defense counsel, later in the trial, elicited detailed information about the confrontation.[6] On cross-examination, the state inquired further into the confrontation. The state, outside the presence of the jury, argued that the defendant's solicitation of the details of the confrontation opened the door to further questions and nullified the stipulation. The trial court agreed and overruled the defendant's objection.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object

---

[6] The transcript of the direct examination of the defendant's wife, Cynthia Pulley, contains the following:

"Q. Okay. And do you recall an incident on March 7, 1993, at a Sunday service between the Reverend Pulley, your husband, and [the victim]?

"A. Yes.

"Q. And could you indicate to us what you saw? Not what you heard, but what you saw?

"A. I saw [the victim] hit Reverend Pulley with a stick, reach into her pocketbook and threaten him that she was going to shoot him with a gun, and I saw Reverend Pulley push her and we got into the middle of it and it was over.

"Q. Do you recall at that service whether the Reverend Pulley, your husband, indicated to [the victim] that she had demons?

"A. No.

"Q. Do you know . . . what she was reaching for her purse for, if you know?

"A. I don't really know. All I know is she said that she would shoot . . . him and as she was reaching into her purse—"

if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Citations omitted; internal quotation marks omitted.) *State* v. *Paulino*, 223 Conn. 461, 467, 613 A.2d 720 (1992).

The defendant has not persuaded us that the trial court abused its discretion by allowing the jury to hear the complete story after the defendant had elicited its discussion. The defendant's questions relating to the confrontation went beyond the stipulation and characterized the victim as the aggressor, and left the jury to believe the defendant merely reacted to the victim. The state logically wanted to show that both parties engaged in the altercation and, indeed, the defendant was actually arrested for breach of peace. The trial court acted within its discretion to allow the jury to hear the complete story.

The defendant's argument that the evidence was not probative is unavailing because he has not offered any reason why the testimony he elicited on direct examination was probative. The defendant attempted to portray the victim as a violent and unstable individual, and the trial court properly allowed the state to balance the picture presented to the jury.

## IV

Finally, the defendant claims that he is entitled to a new trial because he was substantially prejudiced by a

defective charging document. He now claims that the long form information, dated November 28, 1994, was fatally defective because it was replete with disjunctive terminology.[7]

"The accused in a criminal proceeding has the right to be informed of the nature and cause of the accusation[s] . . . against him. U.S. Const., amend. VI; Conn. Const., art. I, § 8." *State* v. *Frazier*, 194 Conn. 233, 236, 478 A.2d 1013 (1984). "When the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 381–82, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

It is sufficient for the state to set forth a statutory designation of the crime charged leaving " 'the defendant the burden of moving for a bill of particulars where [he] wishes greater detail regarding the manner in which [the crime alleged was committed].' " *State* v. *Rogers*, 38 Conn. App. 777, 789, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996). In the present case, the defendant did not file a motion for a bill of particulars, from which we infer that he was satisfied with the information as filed by the state.

The defendant also complains that the information was defective because it was replete with disjunctive

---

[7] The information provided, "on or about May 14, 1992, at the City of New Haven, the accused, Robert Pulley, with intent to deprive [the victim] of her property or to appropriate the same to himself or a third person, wrongfully took, obtained or withheld such property from its owner, [the victim], and the value of such property exceeded five thousand dollars, in violation of Section 53a-123 (a) (2). . . ."

terminology. When an information charges two or more separate offenses in the alternative, it is fatally defective because of its failure to inform the defendant of the specific charge against him. *State* v. *Cofone*, 164 Conn. 162, 167, 319 A.2d 381 (1972). Here, the defendant argues that he could not properly prepare for trial because he did not know with which of several crimes he was charged. If the defendant was charged with committing crime X or crime Y, he understandably could be in a quandary. See *State* v. *Edwards*, 201 Conn. 125, 131, 513 A.2d 669 (1986). That is not the situation here, however. In the present case, the disjunctive is used only in reference to alternative ways of committing the same crime. It is permissible to charge a defendant, or to instruct a jury, in the disjunctive if reference is not being made to separate offenses but if, as here, reference is being made only to alternate ways of committing the same crime. *State* v. *Hufford*, 205 Conn. 386, 397, 533 A.2d 866 (1987).

Furthermore, under circumstances similar to the present case, our Supreme Court has held that the words "taking," "obtaining" and "withholding" are inseparable. *State* v. *John*, 210 Conn. 652, 689, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Pelletier*, 209 Conn. 564, 576, 552 A.2d 805 (1989).

"It is the defendant's burden on appeal to demonstrate that 'he was in fact prejudiced in his defense on the merits' as a result of a material variance between the allegations in [the information] and proof at trial, and that 'substantial injustice was done to him because of the language of the state's pleadings.' " *State* v. *Steve*, 208 Conn. 38, 45, 544 A.2d 1179 (1988). The defendant has not persuaded us that he was prejudiced to the extent that he was deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.