GUERNSEY, Chief Judge.
This action was tiled pursuant to Mohegan Tribal Ordinance 97-6 (Debt Collection Ordinance) by the Mohegan Tribal Gaming Authority against the Defendant, Paul J.Q. Lee. Service of process pursuant to Section 6(d) was made by an indifferent person at Mr. Lee’s address, The 32 Mott Street General Store, 32 Mott Street, New York, 10013, as well as by mailing the same to him. Service of process by an out-of-state process server is permitted by the provisions of the Connecticut General Statutes Section 52-57a.
The Defendant failed to appear within 20 days from the date of service and the Plaintiffs Motion for Default for Failure to Appear was granted by this Court on April 5, 2000. A hearing was thereafter held on April 28, 2000 pursuant to Plaintiffs Motion for Judgment of Damages.
The Court makes the following findings of fact:
1. The Summons and Complaint were duly served on the Defendant pursuant to the provisions of the Mohegan Tribal Debt Collection Ordinance 96-6 and Connecticut General Statutes § 52-57a.
2. The Defendant Paul J.Q. Lee is not a member of the military or naval service, based on the Affidavit of Stephen Sabo dated March 31, 2000.
3. In approximately April, 1998 Stephen Sabo, Director' of Bus Sales for Mohegan Sun, contacted the Defendant Paul J.Q. Lee, whom he had known from prior' business dealings, to propose that Mr. Lee act as agent for bus service to Mohegan Sun operating out of Manhattan and Flushing, New York.
4. As a result, in June, 1998, Mr. Lee came to Mohegan Sun, and an arrangement with was reached with the Plaintiff under the terms of which Mohegan Sun would order buses to pick up casino patrons at locations specified by Mr. Lee in Manhattan and Flushing, and transport them to Mohegan Sun. Mr. Lee would sell the bus tickets to these passengers at a set price.
5. In collecting charges for the bus tickets from these passengers, Mr. Lee acted as collection agent tor the Plaintiff, and was under- an obligation to remit to the Plaintiff a portion of the funds collected.
6. - The amount to be remitted to the Plaintiff was determined according to a schedule thereafter sent to the Defendant by the Plaintiff, and was based on the calculation of the number patrons transported as determined by the greeters at Mohegan Sun Casino; this amount included the Plaintiffs share of the expenses of running the buses.
7. There is no written agreement evidencing the understanding between the Plaintiff and the Defendant Paul J.Q. Lee regarding his actions as collection agent.
8. To date, the Defendant has paid the Mohegan Sun approximately $19,000.00 by means of six checks on different dates, four of which cleared and two of which were returned for reason of insufficient funds.
9. The principal balance due the Plaintiff from the Defendant totals $74,279.00, exclusive of interest and statutory penalties.
10. At no time has the Defendant denied this indebtedness, but rather has *404 made numerous proposals for its repayment, none of which have been carried out.
The court finds that the Plaintiffs claims of conversion and breach of contract (Counts Three and Five) have been clearly established. “[CJonversion is an unauthoi'ized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner’s rights.” Suarez-Negrete v. Trotta, 47 Conn.App. 517, 521, 705 A.2d 215 (1998). By failing to turn over to the Plaintiff the portion of bus ticket receipts due it, even though the failure arose subsequent to the Defendant’s original rightful possession, the Defendant converted property of the Plaintiff to its own use, to the detriment of the Plaintiff. Suarez-N eg-rete v. Trotta, Id. Similarly, the evidence showed that the Defendant breached its contractual arrangement with the Plaintiff to remit a portion of the bus ticket sales.
The Plaintiff has also advanced claims based on statutory theft (Count One), fraud (Count Two), and breach of fiduciary duty (Count Four). At the hearing on Plaintiffs Motion for Judgment of Damages, the Plaintiff focused on its claim for treble damages in Count One Pursuant to Connecticut General Statutes Section 52-564. It has been repeatedly held that “statutory theft under Section 52-564 ‘is synonymous with larceny under general statutes Section 53a-119.’ ” Suarez-Negrete v. Trotta 47 Conn.App. 517, 520, 705 A.2d 215 (1998). At the hearing on its Motion for Judgment of Damages, Plaintiff indicated that it was proceeding under a theory of embezzlement. Under the Connecticut Penal Code, “embezzlement is not a separate and distinct crime from larceny. Our statutes are so organized that a general definition of larceny is contained in General Statutes Section 53a-119.” State v. Pulley, 46 Conn.App. 414, 417, 699 A.2d 1042 (1997). Embezzlement is one of the common methods by which larceny may be committed.
“A significant distinction between traditional larceny and larceny by embezzlement ... is the time when the intent existed to deprive the owner of the money i.e. steal. If the wrongdoer intends to steal the property at the moment it comes into his possession, it is a traditional larceny. By contrast, if the wrongdoer receives the property honestly and at a later time forms the intent to steal, a larceny by embezzlement has taken place.”
State v. Pulley, Id. at 418, 699 A.2d 1042,
The mere failure to pay a debt or to pay for services does not, by itself, establish theft without proof of an act that is larcenous under Conn. Gen.Stat. § 53a-119. Adams & Adams Building Services, Inc. v. STS Group, Inc., Superior Court, J.D. at Hartford, Docket No. CV98 0578865, 1998 WL 846089 (Conn.Super. Nov. 12, 1998). In proving larceny, a specific intent to deprive or misappropriate is an essential element, which can ordinarily be proven only by circumstantial evidence. State v. Fernandez, 198 Conn. 1, 20, 501 A.2d 1195 (1985). In Connecticut, the standard of proof for a claim for the “extraordinary statutory remedy” of treble damages under Connecticut General Statutes Section 52-564 is clear and convincing proof of the actions alleged. Second Injury Fund of the State Treasurer v. Lupachino, 45 Conn.App. 324, 345, 695 A.2d 1072 (1997).
The Defendant’s continued failure to turn over to the Plaintiff the portion of the funds in his hands representing the Plaintiffs share of the bus ticket sales is the only evidence of larcenous intent presented to the court. There is no documentation or written agreement setting forth the Defendant’s duties and obligations *405 with respect to the funds collected from bus patrons. Based on the testimony and exhibits presented, it can be inferred that the Defendant failed to reserve sufficient funds to pay the Plaintiff its share of the bus ticket proceeds, and found himself unable to satisfy this obligation from other sources (Plaintiffs Exhibit 2) when payment was demanded by the Plaintiff. The vagueness of the Defendant’s obligations as “collection agent” in terms of escrowing or otherwise safeguarding funds sufficient to satisfy Plaintiffs claims prevent a finding, by clear and convincing evidence, that this is a situation of larceny rather than that of a civil indebtedness.
With respect to Plaintiffs claim of violation of fiduciary duty (Count Four), the evidence fails to establish “a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other ...” Murphy v. Wakelee, 247 Conn. 396, 400, 721 A.2d 1181 (1998). Other than determining the location from which the tour buses would depart, it does not appear that the Defendant did much more than sell bus tickets and wait for the Plaintiff to compute the amount that it was owed.
As for Plaintiffs claims of fraud (Count Two), it is firmly established that the elements of fraud must be proven by “dear and satisfactory evidence.” Regis v. Connecticut Real Estate Investors Balanced Fund, Inc., 28 Conn.App. 760, 768, 613 A.2d 321, cert. den. 224 Conn. 907, 615 A.2d 1048 (1992). The basis of the count sounding in fraud is that the Defendant used Plaintiffs funds for his own purposes, issued bad checks, and failed to make good on the dishonored checks after notice. In an action for fraud, there must be clear and convincing evidence of four basic elements: (1) a false representation as to a statement of fact; (2) that the statement was known to be untrue by its maker; (3) that the statement was intended to induce reliance thereon; and (4) that the Plaintiff relied on it to its detriment. Mitchell v. Mitchell, 31 Conn.App. 331, 336-37, 625 A.2d 828 (1993). In the instant case there was no proof that the Plaintiff relied to its detriment on the two checks that were not honored. As to whether or not a claim could be advanced that the Defendant fraudulently represented he would safeguard the Plaintiffs portion of the bus ticket receipts, the complete lack of documentation concerning the business relationship between the Plaintiff and Defendant creates such doubt that the same cannot be found proved by clear and satisfactory evidence.
In any case where judgment after default is sought, Section 15(b) of M.T.O. 97-6 provides the this court shall enter judgment as called for by the evidence. Therefore, judgment may enter in favor of the Plaintiff against the Defendant on Counts Three and Five of its complaint to recover of the Defendant the sum of $74,279.00, plus costs. Inasmuch as the actual dates of billing for the various amounts owed the Plaintiff cannot be determined, other than that a summary of all debts was faxed to the Defendant on June 2, 1999 (Plaintiffs Exhibit 1), the court will find that the funds were wrongfully detained as of that date and award prejudgment interest at the rate of 10% per annum pursuant to Conn. Gen.Stat. § 37-3 from June 2, 1999 to the date hereof in the amount of $7,102.29.
The essential elements of statutory theft, fraud and breach of fiduciary duty have not been proven, and judgment may enter in favor of the Defendant on Counts One, Two, and Four.